## NORTH AMERICAN COLD STORAGE CO. v. CITY OF CHICAGO et al.

(Circuit Court, N. D. Illinois, E. D.   January 31, 1907.)

### No. 28,416.

1. COURTS—JURISDICTION OF FEDERAL COURT—AMOUNT OR VALUE IN CONTROVERSY.

A federal court will not dismiss a bill for want of jurisdiction on demurrer on the ground that the requisite jurisdictional amount is not involved in the suit where the bill alleges that the matter in dispute exceeds in value such amount, and discloses no facts which contradict such allegation.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 897.

Jurisdiction of Circuit Courts, as determined by the amount in controversy, see note to Auer v. Lombard, 19 C. C. A. 75; Tennent-Stribling Shoe Co. v. Roper, 36 C. C. A. 459.]

2. SAME—FEDERAL QUESTION—SUFFICIENCY OF PLEADING.

It is not necessary to allege in pleading matters of which the court is bound to take judicial notice or matters which the law presumes, and a bill in a federal court which seeks to enjoin the enforcement of a city ordinance, and invokes the jurisdiction of the court on the ground that such enforcement will deprive complainant of its property without due process of law in violation of the fourteenth constitutional amendment, need not allege that the ordinance was enacted under state authority where there is a statute of the state which confers authority on the city to enact such an ordinance, since the court is required to take judicial notice of such statute, and must presume that the city acted thereunder.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, § 841.]

3. SAME.

A suit against a city and certain of its officers to enjoin the commission of acts by them under the claimed authority of a city ordinance, which it is alleged will deprive complainant of its property without due process of law in violation of the federal Constitution, does not involve any constitutional question which will give a federal court jurisdiction with respect to acts which it clearly appears are not authorized by the ordinance, set out in the bill, and which, if committed, will be without authority of law and mere private trespasses.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 13, Courts, §§ 823, 841.]

4. CONSTITUTIONAL LAW—POLICE POWERS OF STATES—LAWS FOR PROTECTION OF PUBLIC HEALTH.

A municipal ordinance passed under state authority, providing for the inspection of food products, kept within the city in storage or for sale, and authorizing the summary seizure and destruction of any "putrid, decayed, poisoned, and infected" articles of food found on such premises, is well within the police powers of the state, which are not affected by the fourteenth amendment to the federal Constitution.

In Equity.   On demurrer to bill.

L. A. Stebbins and John M. Curran, for complainant.

James Hamilton Lewis, Corp. Counsel, for defendants.

KOHLSAAT, Circuit Judge.   Bill to restrain defendants from alleged interference with complainant's business by threatened arrests, refusal to allow goods to be received at its warehouse, the seizure and threatened condemnation and destruction of certain barrels of poultry, and threats of similar acts in the future.   The bill alleges that the defendants, in committing the acts and making the threats complained of, claimed to be, and were, acting under and by virtue of section 1161 of the Revised Municipal Code of the city of Chicago of 1905, which is set out in the bill as follows:

"Every person being the owner, lessee or occupant of any room, stall, freight house, cold storage house or other place, other than a private dwelling, where any meat, fish, poultry, game, vegetables, fruit, or other perishable article adapted or designed to be used for human food, shall be stored or kept whether temporarily or otherwise, and every person having charge of, or being interested or engaged, whether as principal or agent, in the care of or in respect to the custody or sale of any such article of food supply, shall put, preserve and keep such article of food supply in a clean and wholesome condition, and shall not allow the same, nor any part thereof, to become putrid, decayed, poisoned, infected, or in any other manner rendered or made unsafe or unwholesome for human food; and it shall be the duty of the meat and food inspectors and other duly authorized employés of the health department of the city to enter any and all such premises above specified at any time of any day, and to forthwith seize, condemn and destroy any such putrid, decayed, poisoned and infected food, which any such inspector may find in and upon said premises."

It is further alleged that this ordinance "in so far as it attempts to authorize the city of Chicago, its agents, servants, and employés, to seize, condemn or destroy food or other products, is in conflict with the fourteenth amendment of the Constitution of the United States."

The cause is now before the court on demurrer to the bill.   In support of the demurrer, it is urged, among other things, that the court is without jurisdiction (1) because it appears from the bill that the amount involved is less than $2,000, exclusive of interest and costs, and (2) because it appears from the bill that there is no constitutional question involved.   As to the first objection:   The bill contains an allegation that "the matter in dispute herein, exclusive of interest and costs, exceeds the sum of $2,000.   *   *   *"   There is nothing in the bill to contradict this allegation.   Defendants, however, contend that, inasmuch as it appears in the bill that complainant is a warehouseman, and not the owner of the goods in question, its interest in the way of commissions and charges cannot amount to $2,000.   But it does not appear from the billl whether complainant bases his allegation of amount on the value of the goods, the value of its commissions and charges, or the damage that may be done its business by the acts of defendants.   The allegation may well have been based upon any or all of these elements.   But, even assuming the correctness of defendant's contention that the amount of complainant's personal interest in the way of commissions and charges is alone the proper basis for deter-

mining the amount involved, the court cannot say from the face of the bill that the amount of complainant's commissions is not $2,000. While the allegations of the bill taken as a whole might make it unreasonable to suppose that the commissions of complainant upon the particular goods seized amount to $2,000, the court cannot take judicial notice of the amount of such commissions.' The reasonableness of such allegation cannot be inquired into on demurrer. The court, therefore, holds that the general allegation of amount above quoted is sufficient.

As to the second objection: Defendant contends that it does not appear from the bill that the ordinance pleaded is based upon state authority—that the provision of the fourteenth amendment of the Constitution of the United States is that "No state shall deprive any person * * *" and that it must appear in the bill that the acts of defendants were acts of the state by allegations showing the authority of the city council to pass the ordinance, and that such ordinance was passed in pursuance of this state authority. This court, being bound to take judicial notice of the general laws of the state (Owings v. Hull, 9 Pet. 625, 9 L. Ed. 246; Gormley v. Bunyan, 138 U. S. 625, 11 Sup. Ct. 453, 34 L. Ed. 1086; Mills v. Green, 159 U. S. 657, 16 Sup. Ct. 132, 40 L. Ed. 293), will take notice of those sections of chapter 24 of Hurd's Revised Statutes of Illinois, defining the powers and duties of the city council in cities, which apparently gives power and authority to declare what shall be a nuisance, to abate the same, and to make regulations which may be necessary or expedient for the promotion of health or the suppression of disease. It is not necessary to allege in pleading either matters of which the court is bound judicially to take notice, or matters which the law presumes. Story's Equity Pleading (10th Ed.) § 24. And the court having taken notice of the general law of the state upon which such an ordinance as the one pleaded might properly have been based will presume that the ordinance pleaded is based upon this state authority. 21 Am. & Eng. Ency. of Law, p. 978, and cases cited. It would therefore appear that this point is not well taken.

From the view the court takes of the case, it becomes unnecessary to pass upon the other questions raised. This suit is brought against the city of Chicago and certain of its officers in their official capacity. It would seem very clear that the defendants cannot be held in this court for acts or threats which they have no power or authority from the state to perform, for if there is no ordinance under which they could, with any color of reason, claim to be acting, their acts are not the acts of the state, but mere private acts. While it is alleged that defendants acted and claimed to act under the provisions of section 1161 of the Revised Municipal Code of the city of Chicago, it will be observed that under no possible construction of the ordinance could defendants claim the right of general stoppage of the entire business of complainant in storing admittedly wholesome articles of food, so that it would seem that these acts were those of mere trespassers, and plainly without the sanction of the state. As to these acts, therefore, the remedy must be in the state courts, there being no constitutional question involved necessary to give the court jurisdiction.

Having eliminated those acts which appear from the bill to be private trespasses, there remains (1) a seizure and threatened condemnation and destruction of 47 barrels of poultry; and (2) threats to enforce the ordinance in question in the future. While it is difficult to see how a destruction of the barrels of poultry in question could be in irreparable injury such as is necessary to give a court of equity jurisdiction to interfere by injunction (High on Injunctions [3d Ed.] § 1244; Cicero Lumber Co. v. Town of Cicero, 176 Ill. 9, 51 N. E. 758, 42 L. R. A. 696, 68 Am. St. Rep. 155), it may well be that future acts of a similar nature to that complained of might injure complainant's reputation and good will in such a way as to properly be called irreparable, so that it becomes necessary to pass upon the question of the constitutionality of the ordinance in question. The allegation that this ordinance contravenes the fourteenth amendment to the Constitution of the United States cannot be sustained. The fourteenth amendment does not impair the police power of the states. This was a power not surrendered by the states to the federal government, and is an inherent right of every sovereignty. Barbier v. Connolly, 113 U. S. 27, 15 Sup. Ct. 357, 28 L. Ed. 923; Mugler v. Kansas, 123 U. S. 623, 8 Sup. Ct. 273, 31 L. Ed. 205. In Booth v. People, 186 Ill. 43, 57 N. E. 798, 50 L. R. A. 762, 78 Am. St. Rep. 229, the police power is defined as: "the general power of the government to protect and promote the public welfare even at the expense of private rights." It is clearly within the police power to protect the lives and health of the people by the seizure, condemnation, and destruction of impure and dangerous articles of food. To require a regular judicial hearing, with full opportunity for the owner of the goods to be heard, would often defeat the purposes of the law by tying the hands of the officers intrusted with the duty of guarding the public against the sale of unwholesome food, and would be a serious menace to the lives and health of the people. Deems v. Baltimore, 80 Md. 164, 30 Atl. 648, 26 L. R. A. 541, 45 Am. St. Rep. 339, and cases cited; 25 Am. & Eng. Ency. of L. p. 146; McQuillin, Municipal Ordinances, § 431, and authorities cited. The summary seizure and destruction of property without notice to the owner or judicial hearing has been upheld as a legitimate exercise of the police power by the United States Supreme Court in the case of Lawton v. Steele, 152 U. S. 133, 14 Sup. Ct. 499, 38 L. Ed. 385, where the constitutionality of an act of the New York Legislature, providing for the summary seizure and destruction of nets used in illegal fishing, was in question, and the reasoning of the court in that case applies with even more force in the case at bar, for the nets were not inherently dangerous to the public; while in the case of infected food great injury may be done by delay. The court, in this case (Lawton v. Steele, supra), after stating that there could be no doubt as to the power of the Legislature to authorize judicial proceedings to be taken for the condemnation of the nets in question, and their sale or destruction by process of law, and giving many instances of this assumption of power by Congress, says:

"In all these cases, however, the forfeiture was decreed by judicial proceeding. But where the property is of little value, and its use for the illegal purpose is clear, the Legislature may declare it to be a nuisance, and subject to summary abatement. Instances of this are the power to kill diseased cat-

tle; to pull down houses in the path of conflagrations; the destruction of decayed fruit or fish or unwholesome meats, or infected clothing, obscene books or pictures, or instruments which can only be used for illegal purposes. While the Legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good deal must be left to its discretion in that regard, and if the object to be accomplished is conducive to the public interests, it may exercise a large liberty of choice in the means employed. Newark Railway v. Hunt, 50 N. J. Law, 308, 12 Atl. 697; Blasier v. Miller, 10 Hun (N. Y.) 435; Mouse's Case, 12 Rep. 63; Stone v. New York, 25 Wend. (N. Y.) 157, 173; Am. Print Works v. Lawrence, 21 N. J. Law, 248; Id., 23 N. J. 590, 57 Am. Rep. 420."

See, also, Blair v. Forehand, 100 Mass. 136, 139, 140, 97 Am. Dec. 82, 1 Am. Rep. 94, and cases cited. This decision was followed in the case of Leach v. Elwood et al., 3 Ill. App. 453. If this rule should be held to apply to a case like the present one, it will be borne in mind that the ordinance calls for the seizure and destruction of only "putrid, decayed, poisoned, and infected food," which is without commercial value as food. The court, in Lawton v. Steele, supra, goes on further to say.

"* * * The summary abatement of nuisances without judicial process or proceeding was well known to the common law long prior to the adoption of the Constitution, and it has never been supposed that the constitutional provision in question in this case was intended to interfere with the established principles in that regard."

As above stated the ordinance by its terms in no sense contravenes the provisions of the fourteenth amendment. Manifestly any abuse of the power granted by it would present no federal question. "Nor," as stated in Lawton v. Steele, supra, "is a person whose property is seized under the act in question without his legal remedy. If in fact his property has been used in violation of the act, he has no just reason to complain; if not, he may replevy his nets from the officer seizing them, or, if they have been destroyed, may have his action for their value."

It is true that, in the dissenting opinion in this case, Mr. Chief Justice Fuller, with whom concurred Mr. Justice Field and Mr. Justice Brewer, were unwilling to concede the power of summary abatement by seizure and destruction; but the ground of their dissent was that the nets were property entitled to the protection of the law, and at the time of their seizure were not employed for any improper purpose, and that "as the illegal use of the nets would be terminated by their withdrawal from the water there was a lack of necessity for the arbitrary proceeding prescribed."

The demurrer is therefore sustained, and the bill dismissed for want of jurisdiction.