# JOHN W. DEEMS *vs.* THE MAYOR AND CITY COUNCIL OF BALTIMORE.

*Inspection of Milk—Police Power—Constitutional Law—Injunction—Ordinances.*

The Act of 1894, ch. 53, authorized the Mayor and City Council ot Baltimore to regulate the sale of milk and other food products iu that city. Under this statute an ordinance was passed providing for the inspection of milk offered for sale in the city of Baltimore, forbidding the sale of any milk below the standard prescribed by the ordinance, and authorizing the destruction of milk found to be impure according to that standard. *Held*, that the ordinance was valid.

The destruction of milk found to be impure by the Lactometer, under such ordinance, without prior judicial inquiry, is not a taking of property without due process of law.

The constitutional guarantees concerning property and liberty are not to be construed as abridging the power of the State to pass such laws as may be necessary to protect the health and peace of society.

The above statute authorized the municipality to provide a fine of not more than one hundred dollars for each violation of the ordinance. *Held*, that an ordinance imposing a fine of not less than twenty nor more than fifty dollars was a valid exercise of the power.

Equity has jurisdiction to restrain by injunction the enforcement of an invalid municipal ordinance, the execution of which injuriously affects private rights.

Appeal from Circuit Court No. 2, of Baltimore City. The bill of complaint in this case alleged that certain officers of the Board of Health of Baltimore City, acting under an ordinance of tne city, had destroyed a quantity of milk belonging to the appellant, and had declared their purpose to destroy all milk belonging to the appellant and other dairymen which, after inspection by means of a mechanical instrument known as the "Lactometer," and by a test taken with Litmus paper, they should conclude not to be of the standard prescribed by the ordinance. The bill averred that the said ordinance was void, and asked for an

injunction restraining the Mayor and City Council of Balti-
more and the Commissioners and other officers of the Board
of Health from taking and destroying the milk of the appellant
without a chemical or microscopical examination first made,
and without due process of law.  The Mayor and City Council
demurred to the bill, and from the order of the Court below
(HARLAN, J.) sustaining the demurrer, this appeal was taken.

The cause was argued before ROBINSON, C. J., McSHERRY,
FOWLER, PAGE and ROBERTS, JJ.

*Thomas C. Weeks,* for the appellant.

The act of 1894, ch. 53, authorized the Mayor and City
Council of Baltimore to provide by ordinance for the in-
spection and to regulate the sale of milk and other food
products and to provide "by a fine of not more than one
hundred dollars for each offence for the punishment of vio-
lations against such regulations and ordinances."  By an
ordinance the corporation has imposed a penalty of not less
than twenty dollars and not more than fifty dollars, so that,
whereas, under the statute, a fine could be imposed by the
Criminal Court of from one dollar to one hundred dollars,
the minimum fine is, by the ordinance *increased,* and the
maximun fine is *decreased.*  It was clearly the intention of
the Legislature to give a wide latitude to the Criminal
Court in adjusting the fine to the quality of the offense.
The fine imposed by the ordinance does not express the
intention of the Legislature, and the ordinance is in viola-
tion of the grant.

The Legislature, by the Act of 1894, ch. 53, legislated
upon the subject-matter of the *inspection* of milk and the
*regulation* of its sale in Baltimore City, and in the absence
of any express authority to *destroy* milk, the corporation
had no power to so provide by its ordinance.  The Legis-
lature, knowing the existing law relating to the adulteration
of milk in Baltimore City (Baltimore City Code, Art. 23,
sec. 70,) and the charter powers of the corporation (Balti-

more City Code, "Health," page 158; "Police," page 282), and the mischief intended to be remedied, prescribed by the statute a full and sufficient remedy, and by and within this express legislation respecting the subject-matter, the general powers of the corporation were limited, for by its acts the Legislature enlarges and diminishes the power of a municipal corporation. *Groff* v. *Mayor, etc.,* 44 Md. 78 ; *Miersereau* v. *Miersereau Co.,* (N. J.) 26 Atl. Rep. 682. And a municipal corporation cannot impose a *forfeiture* of property without express legislative authority. *Beach on Pub. Cor.* Vol. 1, sec. 527, and cases in note. *Cooley on Com. Lim.* (6th ed.) 227-248, *note.* And a statutory grant of power to a corporation is strictly construed in favor of public rights. *Am. & Eng. Enc. of L.,* Vol. 15, 1041 ; *Anderson* v. *City of Wellington,* 40 Kan. 173 ; *Brewington* v. *Belvidere,* 44 N. J. L. 350, syl.; *Horr & Bemis on M. Po.,* Ord. 20.

Under its general powers (Baltimore City Code, "Health," 158 ; "Police," 282), the corporation is clothed, within specified limits, with all the legislative power the General Assembly can exert ; and of the necessity for its exercise and the means to be used the municipality is the exclusive judge. But this power does not authorize an unlimited control over the business occupations of the people, and the power to regulate does not include a power to confiscate and destroy. *Harrison* v. *Mayor, &c.,* 1 Gill, 264 ; *Beach on Pub. Cor.,* vol. 1, sec. 90 ; *Am. & E. Ency. of Law,* vol. 15, pp. 1178–79 ; *Ibid,* vol. 18, p. 755 ; *Vansant* v. *Harlem Stage Co.,* 59 Md. 333. Police powers are not superior to constitutional limitations. 1 *Dillon on Mun. Corp.,* 142 ; *Cooley on Const. Lim.* (6th ed.), ch. 16, p. 704 ; *Stone* v. *Mississippi,* 101 U. S. 818 ; *Mayor, etc.,* v. *Scharf,* 54 Md. 517. It is a doctrine not to be tolerated in this country that municipal authorities can declare any particular business a nuisance in a summary mode, and enforce their decision at their pleasure. *Yates* v. *Milwaukee,* 10 Wall. 498 ; *A. & Eng. Enc. of L. V.,* 15, p. 1180, note ;

*State* v. *Mott*, 61 Md. 306 ; *Mayor, &c.,* v. *Radecke,* 49 Md. 230.

By this ordinance the determination of the quality of all milk offered for sale in Baltimore City is left to the arbitrary decision of an Inspector, from whom there is no appeal, who is licensed to destroy the property of the citizen at his pleasure, and by spilling the milk to render impossible any investigation respecting the honesty of his conclusions.  By the exercise of such a power any dairyman conducting an honest and legitimate business can, under color of law, be absolutely ruined and his business be destroyed; or the inspector can secure the consignment of all shipments of milk from the counties to himself in the city of Baltimore, thereby guaranteeing the shipper against the destruction of his property for a pecuniary consideration.  It is, in a word, an absolute, irresponsible power controlling the entire trade, and it is unreasonable to suppose that the grant of such a power is authorized by the general charter powers of the corporation.  ˙

*Thomas G. Hayes, City Counsellor,* (with whom was *William S. Bryan, Jr., City Solicitor,* on the brief), for the appellee.

From the averments of the bill it would appear that there are two reasons assigned by the appellant as the basis of his prayer·for equitable relief.   First, that the milk in question was destroyed by the inspector "without making any chemical or microscopical examination thereof;" second, that Ordinance No. 87, as amended, is unconstitutional, and the property of the appellant under said ordinance is destroyed without due process of law.  On both of these propositions the appellee joins issue, and contends, firstly, that no other examination of the milk in question, before its destruction under said ordinance, was required, but by the Lactometer test, to ascertain the specific gravity of the milk, as prescribed in section 2 of said ordinance ; and secondly, that the ordinance as amended, is constitutional, and

a legitimate exercise of the power delegated to the appellee, both under its general powers to preserve the health of the city as well as by the express power conferred by the Act of 1894, ch. 53.

The Lactometer is the recognized instrument by which the specific gravity of milk is ascertained. The bill in effect admits that the milk of the appellant under the Lactometer test was impure, but claims in addition to this test that there should have been the "chemical or misroscopical examination" to ascertain the solids. The express language of the ordinance makes the milk impure if it fails to come up to any of the requirements of the standard in section 2, that is, if its specific gravity alone is below the standard prescribed, irrespective of the per centum of the total solids or butter facts the milk may contain (both of which per centums can only be ascertained by chemical or microscopical examination), the milk is impure and can be destroyed by the inspector. If the specific gravity is in conformity with standard and the per centum of total solids below the standard, the milk is impure. The chemical and microscopical examination is prescribed in the ordinance as an additional test to ascertain the impurity of the milk, if the specific gravity is up to standard, but there is no line or word in the ordinance requiring this to be made before the condemnation and destruction of the milk which does not come up to the specific gravity test, as ascertained by the Lactometer.

The appellee had full and ample authority under its general powers to pass and enforce the ordinance in question. *Harrison* v. *Mayor & C. C. of Balto.*, Gill, 277; *Boehm* v. *Mayor, &c.*, 61 Md. 263; *Town of Summerville* v. *Pressley*, 11 S. E. Rep. 545; S. Car. 15, *Am. & Eng. Ency. of Law*, 1173; 1 *Dillon on Mun. Corp.* secs. 144, 145, 369.

A milk standard can be established by law. The unbroken line of authorities establishes this proposition. It may be arbitrary and, in fact, an improper standard, yet when the Legislature or its agent, the municipality, under the police power, fixes the standard, it is binding on all persons

`DEEMS vs. M. & C. C. OF BALTO.    169`

Md.]                    Argument of Counsel.

and not open to judicial inquiry.  *People* v. *Cipperley*, 101 N. Y. 634; *State* v. *Campbell*, 64 N. H. 404; *Com.* v. *Waite*, 11 Allen, 264; *Blazier* v. *Miller*, 10 Hun. 435.

The destroying of impure milk, without prior judicial inquiry, is not the taking or destruction of property without due process of law.  *Barbier* v. *Connolly*, 113 U. S. 31; *Hiag* v. *Crowley*, 113 U. S. 703; *Eichenlaub* v. *City of St. Joseph*, 21 S. W. Rep. 8.  In this case the Court draws the correct distinction between the forfeiture of unoffending property and the destruction of the offending thing.  In the former case it is not permissible without a prior judicial inquiry; in the latter case, it is lawful to at once abate the thing which causes hurt to the public.  The validity of the ordinance rests on the immediate and imminent danger to life and health.  *Blazier* v. *Miller*, 10 Hun. 435.

To the same effect are the following cases—all of which emphatically declare that no prior judicial inquiry is necessary before destroying the offending thing.  The only requirement to give validity to the ordinance or law is that it relates to a matter within the scope of the police power either as exercised by the State or delegated to a municipality.  *State* v. *Topeka*, 36 Kan. 83; *Blair* v. *Forehand*, 100 Mass. 140; *Morey* v. *Brown*, 42 N. H. 373; *Wolf* v. *Chalter*, 31 Conn. 121; *Leach* v. *Elwood*, 3 Bradwell 454; *Staller* v. *Sheridan*, 27 Ind. 494; *Jenkins* v. *Ballantyne*, 30 Pac. Rep. 760 (Utah); *Mugler* v. *Kansas*, 123 U. S. 623; *New ark* v. *Hart*, 50 N. J. Law, 308.

It must be remembered that this destruction of the impure milk, as provided by the amendment, is no part of the *punishment* of the owner of the impure milk.  The sole punishment is the fine imposed by section 6 of the ordinance, " *of not less than twenty dollars nor more than fifty dollars for each offense.*"  Nor is the destruction of the impure milk a *forfeiture* of property.  It is simply the destruction of the *offending* thing, which is caught on its way to the homes of families, carrying death and disease in its wake, and it is arrested and destroyed.

There can be no doubt of the right of the Legislature to pronounce, under its police power, certain things, or certain acts, nuisances in themselves, and it may provide that these things may be regulated by ordinances or by laws of the respective cities or towns, or controlled by their authorities. It may determine when that which is otherwise property shall cease to be such if kept against law. The Board of Health is invested, by the Legislature, with the power to make regulation necessary for the health and safety of the inhabitants, extending to all persons, goods and effects arriving in vessels. *Train* v. *Boston Disinfecting Co.*, 144 Mass. 523 ; see also *Guillotte* v. *New Orleans*, 12 La. An. 432 ; *Trageser* v. *Gray*, 73 Md. 257 ; *Boehm* v. *Mayor, etc.*, 61 Md. 264 ; *Heise* v. *Town Council*, 6 Rich. Law, 404. Cases like *In re O'Keefe*, 19 N. Y. sup. 677 ; *Philips* v. *Allen*, 41 Pa. St. 481 ; *Dawes* v. *Hightstown*, 45 N. J. L. 503, have no analogy to the case at bar.

ROBINSON, C. J., delivered the opinion of the Court.

In addition to the general powers conferred on the Mayor and City Council by sec. 378, Art. 4, Code Public Local Laws, to pass ordinances to preserve the health of the city, the Act of 1894, chap. 53, expressly authorizes them to provide by ordinance for the proper inspection of milk and all other food products offered for sale in the city, and to make such regulations in regard to the sale of the same as they may deem necessary to protect the public health.

It was in pursuance of these powers that Ordinance No. 87, now in question, was passed. This ordinance makes it unlawful for any person to sell or offer for sale " any impure, adulterated, sophisticated or unwholesome milk or other food products." It further provides that only pure, unadulterated, unsophisticated and wholesome milk shall be sold, and that such article shall be understood to be the natural product of healthy cows, and which has not been deprived of any part of its cream, and to which no additional liquid or solid preservative has been added,

and which, at a temperature of 60° F., shall have a specific gravity of not less than 1.029 and not less than twelve per cent. of total solids, and not less than three per cent. of butter fats.     And all milk kept or offered for sale in the city, which shall not come up to the standard thus prescribed, shall be considered impure, adulterated, sophisticated or unwholesome.

And the ordinance also provides that the term adulterated shall be construed to mean any artificial addition to normal constituents, and the term sophisticated to mean the substitution of one product for another, or any abstraction of or artificial change in the normal constituents, and the term unwholesome to mean deleterious to health, etc.     And it further provides for the appointment of a competent analytical chemist, who shall make such chemical and microscopical examinations as may be required under the ordinance, and for the appointment also of three inspectors of food.

And section 6, as amended, provides, "And milk or food products in the possession of the person or persons so violating, disobeying, refusing or neglecting to comply with the provisions of this ordinance may be confiscated and destroyed by the inspector examining the same."

The bill of complaint alleges that the appellant is a dairyman, and conducts a retail business for the sale of milk, and that in the pursuit of his business he daily serves milk from his wagons to his customers at their homes in the city.

That on or about the 16th July, 1894, Patrick R. Welsh, inspector, and William P. Tonry, analyst, on the public highway, took certain milk, the property of the appellant, "and without making any chemical or microscopical examination thereof, and without due process of law, poured the said milk out upon the streets and down the gutters of the city, thereby wasting and destroying the said milk."

The bill also alleges that the said Patrick R. Welsh and William P. Tonry under the direction of the Board of Health and under color of Ordinance 87 as amended, publicly declared their intention to destroy the milk of the appel-

lant and others, which, after an inspection by them, made by means of a certain mechanical instrument known as a "Lactometer," and by a test taken with "Litmus" paper, they shall conclude not to be of the standard prescribed by the ordinance. The bill further alleges that the ordinance is an undue and excessive exercise of the corporation's legislative powers as conferred by law, and that sect. 6 as amended, as absolutely void and no effect.

Besides the general relief, the bill prays that an injunction be issued restraining the Mayor and City Council and all the other defendants from taking and destroying, without chemical or microscopical examination first made, and without due process of law first had, any milk or other dairy product, the property of the complainant, &c.

We cannot agree with the counsel for the appellee, that a Court of Equity has no jurisdiction to restrain the appellee in the enforcement of the ordinance in question, even though it may be conceded to be *invalid* and that its execution would *affect injuriously the rights of the appellant* and others. In *Page's case*, 34 Md. 558, and in *Holland's case*, 11 Md. 186, and in other cases, we have said that "where an ordinance is void and its provisions are about to be enforced, any party whose interests are to be injuriously affected thereby may and properly ought to go into a Court of Equity and have the execution of the ordinance stayed by injunction."

An *action at law*, it is true, would not lie against the city authorities to recover *damages* for the wrongful acts of its officers in the execution of the ordinance, and for the reason that the police power to pass such ordinances, is delegated by the State to be exercised not for the benefit or in the interest of the city *in its corporate capacity*, but for the *public good*. *Boehm's case*, 61 Md. 259. There is a broad distinction, however, between an action at law against the city authorities to recover damages for the wrongful acts of its officers, and the power of a Court of Equity to restrain the enforcement of an ordinance admitted to be

invalid, and the execution of which affects injuriously private rights.

Nor can there be any question as to the power of the appellee to provide by ordinance for the inspection of milk offered for sale within its corporate limits, and to forbid the sale of any milk which does not come up to the standard or test prescribed by the ordinance.   And the real question it seems to us under the demurrer, is whether it has the power to direct that milk which is found upon inspection not to come up to the standard, as thus prescribed, *shall be destroyed?*

What is termed the police power has been the subject of a good deal of consideration by both the Federal and State Courts, and all agree that it is a difficult matter to define the limits within which it is to be exercised.   Every well organized government has the inherent right to protect the health and provide for the safety and welfare of its people. It has not only the right, but it is a duty and obligation which the sovereign power owes to the public, and as no one can foresee the emergency or necessity which may call for its exercise, it is not an easy matter to prescribe the precise limits within which it may be exercised.   It may be said to rest upon the maxim, " *Salus populi suprema lex,*" and the constitutional guarantees for the security of private rights relied on ·by the appellant have never been understood as interferring with the power of the State to pass such laws as may be necessary to protect the health and provide for the safety and good order of society.   " Property of every kind," says Mr. Justice Story, " is held subject to those general regulations which are necessary for the common good and general welfare.   And the Legislature has the power to define the mode and manner in which every one may use his property."   *2 vol. Story Const.*

And in the late case of *Mugler* v. *Kansas*, 123 U. S. 62, after considering the constitutional limitations which declare that no person shall be deprived of his property or liberty without due process of law, the Supreme Court says these

limitations " have never been construed as being incompatible with the principle equally vital, because so essential to the peace and safety, that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community."

To justify such interference with private rights, its exercise must have for its *immediate object the promotion of the public good,* and, so far as may be practicable, every effort should be made to adjust the conflicting rights of the public and the private rights of individuals. At the same time the emergency may be so great, and the danger to be averted so imminent, that private rights must yield to the paramount safety of the public, and to await, in such cases, the delay necessarily incident to ordinary judicial inquiry, in the determination of private rights, would defeat altogether the object and purposes for which the exercise of this salutary power was invoked. Whatever injury or inconvenience one may suffer in such cases, he is, in the eye of the law, compensated by sharing the common benefit resulting from the summary exercise of this power, and which, under the circumstances, was absolutely necessary for the protection of the public.

The use of milk as an article of food enters largely, as we all know, in the daily consumption of every household, and there is no more fruitful source of disease than the use of adulterated and unwholesome milk. And if the appellant's contention be right, that the question whether or not milk, which is daily offered for sale in every part of a large and populous city, comes up to the standard prescribed by the ordinance, must be determined by the ordinary process of judicial investigation or by chemical analysis, it would be impossible to prevent the danger to the public health necessarily resulting from impure and unwholesome milk. And it is absolutely necessary, therefore, that the appellee should have the power to provide for its inspection by *proper means and instruments,* and if upon such inspection it shall be found not to come up to the standard prescribed by the

ordinance, to direct that *the offending thing shall be destroyed.*

The exercise of such a power is, we think, fully sustained both on principle and authority.    In *Blazer* v. *Müller*, 10 Hun. 432, an ordinance, like the one now before us, authorized the inspector to destroy milk offered for sale which, upon inspection, was found to be below the proper standard, was sustained on the ground that the destruction of the offending thing was necessary to prevent the imminent danger to life and health, which would result from the use of impure milk.   And in *Mugler* v. *Kansas*, to which we have heretofore referred, Mr. Justice Harlan says : " The exercise of the police power by the destruction of property, which is itself a public nuisance, or the prohibition of its use in a particular way, whereby its value becomes depreciated, is very different from taking property for public use, or from depriving a person of his property without due process of law."

It is in the exercise of this power that quarantine laws, which not only interfere with private rights, but with the liberty of persons, are passed ; and also, laws which provide for the destruction of infected clothing to prevent the spread of contageous diseases. And as to the extent and the summary manner in which this power may be exercised to protect the public health, we may refer to *Boehm's case*, 61 Md. 264 ; *Train* v. *Boston Disinfecting Co.*, 144 Mass. 523, and *Newark* v. *Hart*, 50, N. J. L. 308.

The Act of 1894, authorizing the appellee to provide for the inspection of milk, and to make such regulations in regard to the same as it may deem necessary, also authorizes the appellee to provide, by a fine of not more than one hundred dollars, for the punishment of all persons violating such regulations. The amount of the fine was left to the discretion of the appellee; provided, however, it was not to exceed one hundred dollars. The ordinance in question provided a fine of not more than fifty dollars, as a punishment for persons violating its provisions, and as the amount

of the fine, not to exceed, however, one hundred dollars, was left to its discretion, there can be no objection to the ordinance on this ground.

*Order affirmed.*

(Decided December 18th, 1894.)