STATE OF MINNESOTA v. HANS C. NELSON.[1]

November 6, 1896.

Nos. 10,377—(200).

City of Minneapolis — Milk Inspection — Ordinance — Laws 1895, c. 203.

Certain provisions of an ordinance of the city of Minneapolis to license and regulate the sale of milk in the city considered, and *held* to be authorized by Laws 1895, c. 203, entitled "An act relating to the inspection of milk and of dairies and of dairy herds and to provide for the licensing and regulation of the sale of milk in cities."

Same—License—Dairy Outside City

It is competent for a city council, by ordinance, to require that an applicant for a license to sell milk within the city shall consent that the dairy herd from which he obtained his milk may be inspected by the commissioner of health of the city, although such dairy herd is kept outside the city limits.

Same—"Tuberculin Test."

The requirement that he shall consent, as a condition precedent to obtaining such license, that the animals from which he obtains the milk shall be subjected to the "tuberculin test," is not unreasonable.

[1] Reported in 68 N. W. 1066.

**Same—Laws 1889, c. 247.**

Whether a license from a city under an ordinance passed pursuant to Laws 1895, c. 203, is, as to the sale of milk in such city, a substitute for the license from the state dairy commissioner, provided for in Laws 1889, c. 247, or whether it is merely supplemental and additional, is not decided.

**Same.**

In either view, the ordinance is authorized by the act of 1895.

Defendant was convicted in the municipal court of Minneapolis of selling milk without license, in violation of an ordinance, and appealed from an order, Kerr, J., denying a motion to vacate and set aside the decision and judgment of conviction and for a new trial. Affirmed.

*F. F. Davis*, for appellant.

*David F. Simpson* and *M. D. Purdy*, for respondent.

MITCHELL, J.   Laws 1887, c. 140, as amended by Laws 1889, c. 247,[2] entitled "An act to prevent deception in the sale of dairy products and to preserve the public health," etc., prohibited, among other things, the keeping of cows for the production of milk for the market in a crowded or unhealthy condition, and the sale of impure or unwholesome milk, and provided for the appointment of a dairy commissioner and assistant commissioner, experts and chemists, who should have access to all places used in the manufacture and sale of dairy products.   Sections 13 and 14 of the amendatory act (G. S. 1894, §§ 7004, 7005) provided, in substance, that every one who sold or offered for sale milk in any city or town of 2,000 inhabitants or more should obtain a license from the dairy commissioners.

The legislature subsequently enacted Laws 1895, c. 203, providing that the city council of any city may, by ordinance, provide for the inspection of milk and of dairy herds kept for the production of milk within its limits, and issue licenses for the sale of milk within its limits, and regulate the same, and may authorize and empower the board of health to enforce all laws and ordinances relating to the production and sale of milk for sale or consumption within such city, and to appoint such inspectors, etc., as are necessary for the proper enforcement of such laws and ordinances; and such inspectors, etc.,

[2] G. S. 1894, §§ 6992–7009.

shall be possessed of such necessary powers within the limits of such city as shall be prescribed by ordinance, but no such ordinance shall conflict with any law of this state. The act further provided that nothing therein contained should affect or interfere with any of the powers and duties conferred on the state dairy commissioner by any law of this state.

In June, 1895, the city council of Minneapolis passed an ordinance to provide for the inspection of milk, dairies and dairy herds, and to regulate the sale of milk, in the city of Minneapolis. This ordinance is set out in full in appellant's brief as Exhibit C. Its provisions, so far as now material, may be summarized as follows:

Any person desiring a license to sell milk in the city is required to file with the commissioner of health of the city an application therefor, stating, among other things, the location or place from which the applicant obtains the milk, and, if he is not a producer of milk, then the name of the person from whom he obtains his milk, and also requesting the city to inspect his dairy and dairy herd, or the dairy or dairy herd of the person from whom he obtains his milk, for the purpose of carrying out the provisions of the ordinance, a refusal of the applicant to permit such inspection to result in his failure to obtain a license. Upon the filing of such application the commissioner of health is to inspect the dairy and dairy herd of the applicant or those of the person from whom he obtains his milk, and to cause an examination by the veterinarian of the department of health to be made of every animal producing milk for sale within the city, belonging to the applicant or the person from whom he obtains his milk; and "for the purpose of detecting * * * tuberculosis or any other contagious or infectious disease * * * the said veterinarian * * * in making such inspection is hereby authorized to use what is commonly known as the 'tuberculin test' as a diagnostic agency for the detection of tuberculosis in such animal."

The ordinance further provides for the tagging of each animal thus examined and inspected, so as to afford a permanent record of the result as regards the presence or absence of an infectious or contagious disease; that when the applicant or the person from whom he obtains his milk shall have removed from his dairy herd all cows and animals which may be found to be affected with any contagious disease, so that they are no longer used for the production of milk

for sale or consumption within the city, then the commissioner of health shall make a report to the city council concerning such applicant and the condition of the dairy and dairy herd from which he obtains his milk. After these reports are submitted, the city council is, after proper examination, to determine what applicants are entitled to a license to sell milk in the city. It then becomes the duty of the commissioner of health to issue licenses to those determined by the city council to be entitled thereto. The ordinance also provides that no person shall sell, deal in, or dispose of any milk within the city without first having obtained a license so to do in the manner above provided, and imposes a penalty for the violation of any of the provisions of the ordinance.

The defendant, having been convicted of selling milk in the city without first having obtained a license as provided in the ordinance, appealed to this court.

1. The first and second objections urged against this ordinance are virtually one, and may be considered together. The objection is that the provisions of the ordinance are not within the limits prescribed for it by the statute, for the reason that it is attempted to make its operation extraterritorial, in that it provides for the inspection of dairies and dairy herds outside the city limits. There is no merit in this point.

The manifest purpose of the statute under which this ordinance was passed was to enable the city council to adopt such reasonable police regulations as would prevent the sale of unwholesome milk within the city, and not merely to prevent the keeping of unhealthy dairy herds within the city limits. It is a matter of common knowledge that much of the milk sold in a city is produced in dairies situated outside the city limits. Any police regulations that did not provide means for insuring the wholesomeness of milk thus brought into the city for sale and consumption would furnish very inadequate protection to the lives and health of the citizens. It is also a matter of common knowledge, as well as of proof in this case, that the wholesomeness of milk cannot always be determined by an examination of the milk itself. To determine whether it does or does not contain the germs of any contagious or infectious disease it is necessary to inspect the animals which produce it. The inspection of dairies or dairy herds outside the city limits provided for by this ordinance

applies only to those whose milk product it is proposed to sell in the city. The provisions of the ordinance in that regard go only so far as it is reasonably necessary to prevent the milk of diseased cows being sold within the city. This inspection is wholly voluntary on part of the owner of the dairy or dairy herd. If he does not choose to submit to such inspection, the result merely is that he or the one to whom he furnishes milk cannot obtain a license to sell milk within the city. The ordinance has no extraterritorial operation, and there has been no attempt to give it any such effect. The only subject upon which it operates is the sale of milk within the city.

2. The objection is urged that the ordinance is oppressive and unreasonable, in that it requires every dairy herd whose milk is desired to be sold within the city to be subjected to the "tuberculin test," which it is claimed is uncertain in its results, and deleterious to the health of the animals. At the present stage of scientific research on this subject it may be a debatable question whether this test has been fully proven, or how far it is as yet merely experimental. There is ample evidence in this case that it is now the generally accepted theory that the presence of consumption or tuberculosis in animals can be detected by this test; also that this is what is called a "germ disease," which may be contracted by eating the flesh or drinking the milk of a tuberculous animal. Upon the evidence we could not say that this provision of the ordinance is oppressive, or that it has not a reasonable tendency to prevent the sale of unwholesome milk within the city.

There are some other objections urged against the reasonableness of the ordinance, but none of them are of sufficient merit to require special notice.

3. It is further urged that the ordinance is repugnant to Laws 1887, c. 140, as amended by Laws 1889, c. 247. The point of this objection is that the act referred to intrusts to the state dairy commissioner the matter of inspecting dairies and dairy herds and issuing licenses to sell milk in cities or towns of 2,000 inhabitants, while under the ordinance in question these powers, so far as they relate to dairies and dairy herds whose milk it is proposed to sell in the city, are assumed to be exercised by the city council, whereas the act of 1895 provides [3]

[3] Section 2.

that no ordinance shall conflict with any law of the state and that nothing in that act shall affect or interfere with any of the powers and duties conferred on the state dairy commissioner by any law of the state. It must be presumed that the legislature intended to do something when it enacted the law of 1895. But, if counsel's contention is correct, then the legislature, in the first part of that act, conferred certain powers upon the cities, and then, in the latter part of the same act, took these powers all back. It is clear that the legislature intended to confer on city councils the very powers which have been exercised by the enactment of this ordinance.

Whether, when a city has exercised these powers, it is, as to the sale of milk in such city, a substitute for the license from the dairy commissioner provided for in the act of 1887 as amended in 1889, or whether it is merely supplemental and additional, is a question not involved in this case, for in either view the provisions of the ordinance under consideration are authorized by the act of 1895.

Order affirmed.