CITY OF ST. PAUL v. FREDERICK R. PECK.

January 18, 1900.

Nos. 11,957—(219).

78    497
f86    106

### Inspection of Dairy Herds—Laws 1895, c. 203—Fee.

Laws 1895, c. 203, does not, by implication or otherwise, confer upon the city council of a city authority to impose an inspection fee for the inspection of dairy herds kept for the production of milk within the city.

78 M.—32

**Same—City of St. Paul.**

> Ordinance No. 2042 of the city of St. Paul, in so far as it provides for such a fee, is invalid.

Defendant was charged in the municipal court of St. Paul with violation of Ordinance No. 2042 as amended by Ordinance No. 2059 of the city of St. Paul. The case was tried before Hine, J., and resulted in a judgment of conviction, from which defendant appealed. Reversed.

*John L. Townley* and *Thomas R. Kane,* for appellant.

*J. E. Markham* and *Franklin H. Griggs,* for respondent.

BROWN, J.

Laws 1895, c. 203, authorizes the city council of any city to provide by ordinance for the inspection of milk of dairies and of dairy herds kept for the production of milk within its limits, and to issue licenses for the sale of such milk therein. Under this authority the city council of the city of St. Paul duly passed and enacted an ordinance providing for such inspection, and imposing an inspection fee of 50 cents for each animal inspected, to be paid by the owner of the animal at the time of inspection. The defendant owns a dairy herd, and is engaged in the business of selling milk within the city of St. Paul. He duly applied for a license under the provisions of this ordinance, but his application was denied by the city authorities for the reason that he refused to pay the inspection fee. He continued his business without the license, and was arrested and convicted for a violation of the ordinance. He appeals from the judgment of conviction.

Although there are ten assignments of error, under some of which some minor questions may be presented, we dispose of the case upon the main and important question, whether the ordinance referred to, or rather that portion imposing the inspection fee, is a valid law. In its main features the ordinance is substantially similar to that involved in State v. Nelson, 66 Minn. 166, 68 N. W. 1066. The only difference between the two ordinances is that no inspection fee is provided for in the one involved in that case, while one is provided for by the ordinance here under consideration. As we conclude that the city exceeded its authority in im-

posing such fee, it will not be necessary to consider any other question in the case.

The business of dairying, and of keeping and maintaining dairy herds for the production of milk for sale to the inhabitants of cities, has come to be a business of very large proportions in this state. Large quantities of such milk are daily sold to and consumed by such inhabitants, and it is relied upon and used as one of the principal articles of food. It is important that such milk be wholesome and pure, and considerations for the health of the citizen demand and require the passage and enactment of such police regulations as will prevent the maintenance of diseased animals from which such milk is obtained, and the selling and disposing of impure and unwholesome milk. There can be no question as to the validity of such laws. They are everywhere upheld. And the right of the legislature to confer upon cities the right and authority to enact them is also upheld. State v. Nelson, supra. Such laws are not enacted by the state, nor authorized to be enacted by cities or other municipalities, for the purpose of producing a revenue, but solely as police regulations, and in the interest of the public welfare. In cases where the authority is conferred upon cities, and such authority is silent as to license or inspection fees, the authorities all hold that the right to impose, as incident to the exercise of the power, such reasonable fees as are necessary to defray the legitimate expenses of administration, is implied. But fees and charges, whether denominated "license fees" or "inspection fees," which go beyond this, and tend to destroy or materially injure the industry, are not sustained.

And in this case, if the authority under which the city acted in passing the ordinance in question was silent on the subject, we should, if we followed the trend of authorities generally, have only to determine the question whether the fee imposed by the ordinance is within reasonable limits. But the ordinance is not silent, and we have for determination the proper construction of the statute under which it was enacted. What authority did the legislature intend to confer upon cities by Laws 1895, c. 203? The statute reads as follows:

"Section 1. The city council of any city may by ordinance provide for the inspection of milk and of dairies and of dairy herds kept for the production of milk within its limits and issue licenses, for which no fee shall be charged, for the sale of milk within its limits and regulate the same, and may authorize and empower the board of health to enforce all laws and ordinances relating to the production and sale of milk and the inspection of dairies and dairy herds producing milk for sale or consumption within such city, and to appoint such inspectors, experts and chemists as are necessary for the proper enforcement of such laws and ordinances their compensation to be fixed by the city council, and such inspectors, experts and chemists shall be possessed of such necessary powers within the limits of such city as shall be prescribed by ordinance, but no such ordinance shall conflict with any law of this state."

To what do the words "for which no fee shall be charged" refer? To all that precedes them, or to the issuance of the license only? The question is by no means clear. Matter of punctuation is not an important item for consideration in the construction or interpretation of a statute. The intent of the legislature must be sought for, and such intent must control, without regard to the particular language used, or the punctuation marks employed.

When we have in mind the fact that the general laws of the state provide for a state dairy commissioner and numerous assistants, and confer upon that official and his aids powers similar to those conferred by this ordinance; the further fact that the state expressly licenses all milk dealers, and exacts from them the very nominal fee of $1 per year; when we have in mind that it should be the policy of the law to protect, rather than to hinder or destroy, a business so beneficial to the people; the fact, too, that the matter of inspection of such animals is a part and parcel of the proceedings leading to the issuance of the license,—it is not very unreasonable to suppose that the legislature intended by this statute, and by the use of the words especially pointed out, to withhold the right to impose any fee, either for inspection or for the license. Had it been understood that the statute in question, in its present form, carried with it the power and authority in the city council to impose an inspection fee which in the very nature of things would amount to much more than the nominal sum of $1, which the legislature deemed sufficient for a state license, some safe-

guards and limitations would certainly have been added to the law, to the end that a business of so much importance, and so beneficial to the people, could not be rendered unprofitable by the imposition of excessive inspection fees.

The statute expressly provides that ordinances passed thereunder shall not conflict with any of the laws of the state. The state granted defendant a license under the general statutes for the term of one year, and the city in effect annuls it, and destroys the privileges conferred thereby, by refusing him a city license except upon payment of an inspection fee. Here we have a square conflict between the authority of the state and of the city. The authority of the state is preserved and made dominant by the provision of the statute in question which restricts the ordinances of the city to such as shall not conflict with the laws of the state. This alone furnishes a strong reason for construing the statute as withholding the right to impose an inspection fee. The issuance of a city license is conditioned upon the payment of this fee, and it is not so clear but that, being so conditioned, and the license being refused if it is not paid, such inspection fee becomes, to all intents and purposes, a license fee, which it is conceded the city has no right to exact. The inspection is necessary to enable the licensing power to determine whether the applicant is entitled to a license, and it necessarily follows that the expense of ascertaining this preliminary fact is a part of the expense of the license.

In the light of all these considerations, we are of the opinion, and so hold, that the city council exceeded its authority in imposing an inspection fee as a condition for the issuance of a license under the authority conferred by Laws 1895, c. 203, and that to that extent the ordinance imposing it is invalid.

Judgment reversed.