Ross *v.* Desha Levee Board.

Opinion Delivered June 3, 1907.

Constitutional law—due process—summary destruction of property. —The act of March 30, 1903, making it unlawful to permit the running at large of hogs on the public levee in the Desha Levee District in Desha County, and providing, in effect, that it shall be lawful to kill any hogs found within one hundred feet of the base of the levee, is not unconstitutional in authorizing the summary destruction of hogs so trespassing.

Appeal from Desha Circuit Court; *Antonio B. Grace,* Judge, affirmed.

*X. O. Pindall,* for appellant.

This case is to be distinguished, as to the constitutionality of the act in question, from the Gans case, 69 Ark. 252, sustaining the act authorizing the destruction of liquors shipped into a prohibited district to be sold contrary to law. That case and the act it sustained are based upon the *unlawful sale* of liquors; whereas the act in question here in effect justifies the confiscation and destruction of peaceable domestic property, the right to which the owner holds, yielding his sovereignty therein, if at all, only to the State in the exercise of the right of eminent domain, and her

police power. Just compensation necessarily goes with the exercise of the right of eminent domain, while the State's police power has never by any constitutional enactment been delegated to a levee board, nor is it susceptible of such delegation. 187 Ill. 587; 79 Am. St. Rep. 238; 91 Ky. 175.

The act is unconstitutional because it deprives the owner of his property without just compensation, and also because it deprives the owner of his property without due process of law. Acts 1903, p 182; art. 2, § 22, State Const.; 14 Amendment U. S. Const.; 36 Fed. 385; 10 Am. Eng. Enc. of L. (2 Ed.), 288; 38 Atl. 9; 61 Fed. 713; 106 U. S. 366; 18 How. (U. S.), 272; 61 Ill. 115; 19 Ill. 376; 128 N. Y. 190; 15 N. C. 1; 4 Wheat, (U. S.) 518; 5 Fed. 899; 50 Miss. 468; 13 Ark. 198; 5 Ark. 43.

*F. M. Rogers* for appellee.

1. If it be conceded that the act is an invalid exercise of police power, still the district, being a *quasi* municipal corporation, is not liable for the torts of its officers. 20 Am. & Eng. Enc. of L. 1195; 34 Ark. 105.

2. The act is a valid exercise of police power. This court has repeatedly sustained the validity of town ordinances prohibiting live stock from running at large on the streets, for impounding the stock and for the payment of penalties. If the Legislature has power to create levee districts and to burden the property within the districts with imposts to erect and maintain them, it has power to protect them from the ravages of destructive animals.

BATTLE, J.  J. S. Ross brought an action before a justice of the peace of Desha County against the Desha Levee Board, to recover the value of eight hogs alleged to have been killed by and in pursuance of the order of the defendant, and to be of the value of $68.10. In trials before the justice of the peace, and in the Desha Circuit Court on appeal, the defendant recovered judgment, and the plaintiff appealed to this court.

The defense of appellee was based upon the act of the General Assembly of the State of Arkansas in the following words and figures:

"Section 1. It is hereby made unlawful to permit the running at large of hogs on the public levees in the Desha Levee District in Desha County.

"Section 2. The owner of any hogs who permits the same to run at large on the levees mentioned in section 1 of this act, or places his hogs on any of said levees in pens or other inclosures, is hereby declared to be guilty of a misdemeanor, and on conviction thereof shall be fined in any sum not less than $10, and each day that said hogs are permitted to run on said levees or are kept thereon shall constitute a separate offense.

"Section 3. In any suit, civil or criminal, for the killing or taking of any hogs within the territory of said levee district, the plaintiff or prosecution shall allege or prove that said hog or hogs were not killed or taken on any of the public levees in said levee district or within one hundred feet of the levee base of said levee, and on failure of such allegation and proof verdict shall be for the defendant." Act of March 30, 1903.

According to the act and the evidence adduced in the trials, appellant was not entitled to recover. The question in the case is, is the act constitutional?

The object of the act was to protect the public levees in the Desha Levee District against the rooting of hogs. As many as two acts were passed for that purpose before the act copied in this opinion was enacted. The first act made it unlawful for hogs to run at large upon the levees in said district, and provided that any hogs found running at large on such levees may be taken up, impounded and sold, unless redeemed by the owner. Acts of 1893, page 326. The second, an act entitled "An act to protect the public levees in Chicot and Desha counties," approved February 28, 1895, after reciting that these levees are greatly injured, weakened and their safety endangered by hogs rooting into the levees, prohibited their running at large without rings in their noses, so put in as to effectually prevent them from rooting, and provided that hogs found running at large on or within one mile of said levees, without being properly ringed, may be killed, and that the owner knowingly permitting such hogs to so run within one mile of such levees, without being properly ringed, shall be deemed guilty of a misdemeanor, and upon conviction shall be fined in any sum not exceeding ten dol-

lars for each offense. Acts of 1895, page 25. Finally, on the 30th of March, 1903, the act involved in this action was passed. The object of all these acts was to protect the levees against the well-known proclivities of hogs to root and the great liability of the levees to be weakened and broken in consequence thereof in times of great floods, and the disastrous consequences following. To accomplish this purpose, the last act in effect makes the running at large of hogs upon the levees or within one hundred feet of their base a nuisance, subject to be abated by the killing of the hogs. Within these forbidden limits it was deemed dangerous to the safety of the levees to permit the hogs to wander, made so by their irresistible and unceasing inclination to root whenever an opportunity is afforded; and it was deemed necessary to impose the penalty in order to compel the owner to keep them out of such limits.

In *Sentell* v. *New Orleans & Carrollton Railroad Co*, 166 U. S. 704, it is said: "That a State, in a *bona fide* exercise of its police power, may interfere with private property, and even order its destruction, is as well settled as any legislative power can be which has for its object the welfare and comfort of the citizens. For instance, meats, fruits and vegetables do not cease to become private property by their decay; but it is clearly within the power of the State to order their destruction in the times of epidemics, or whenever they are so exposed as to be deleterious to the public health. There is also property in rags and clothing; but that does not stand in the way of their destruction in case they become infected and dangerous to the public health. No property is more sacred than one's home, and yet a house may be pulled down or blown up by the public authorities, if necessary to avert or to stay a general conflagration, and that, too, without recourse against such authorities for the trespass. * * * Other instances of this are found in the power to kill diseased cattle, to destroy obscene books or pictures, or gambling instruments; and, in *Lawton* v. *Steele*, 152 U. S. 133, it was held to be within the power of the State to order the summary destruction of fishing nets the use of which was likely to result in the extinction of valuable fisheries within the waters of the State."

In this State it has been held that liquor kept for sale in a

district in which the sale of it is prohibited can be seized under an act of the Legislature and destroyed without compensation. *Ferguson* v. *Josey,* 70 Ark. 94; *Kirkland* v. *State,* 72 Ark. 171. In *Garland Novelty Co.* v. *State,* 71 Ark. 138, this court held that "a statute making it the duty of circuit judges, etc., on information given, or on their knowledge, or when they have reasonable grounds to suspect that the law is being violated by the operation of gaming devices, to issue their warrant to some peace officer directing him to search for and destroy gaming tables or devices, authorizes the summary destruction of those tables and devices only that are made and kept solely for the purpose of gambling, and that can be used for no other purpose, and the act is not unconstitutional as depriving the owner of his property without due process of law."

But it is said that the act in question authorizes the destruction of the property of appellant without notice, judicial proceedings, an opportunity to be heard, or process of law, and is therefore unconstitutional. This does not necessarily follow, In *Lawton* v. *Steele,* 152 U. S. 133, the court held that a statute of New York which provides " that nets set or maintained upon waters of the State, or on the shores or islands in such waters in violation of the statutes of the State enacted for the protection of fish, may be summarily destroyed by any person, and that it shall be the duty of certain officers to abate, remove, and forthwith destroy them, and that no action for damages shall lie or be maintained against any person for or on account of such seizure or destruction, is a lawful exercise of the police power of the State, and does not deprive the citizen of his property without due process of law, in violation of the provisions of the Constitution of the United States." In that case the court said: "Where the property is of little value, and its use for the illegal purpose is clear, the Legislature may declare it to be a nuisance, and subject to a summary abatement. Instances of this are the power to kill diseased cattle; to pull down houses in the path of conflagrations; the destruction of decayed fruit or fish or unwholesome meats, or infected clothing, obscene books or pictures, or instruments which can be only used for illegal purposes. While the Legislature has no right arbitrarily to declare that to be a nuisance which is clearly not so, a good

deal must be left to its discretion in that regard; and if the object to be accomplished is conducive to the public interest, it may exercise a large liberty of choice in the means employed."

Again it says: "The value of the nets in question was but $15 apiece. The costs of condemning one, (and the use of one is as illegal as the use of a dozen) by judicial proceedings would largely exceed the value of the net, and doubtless the State would, in many cases, be deterred from executing the law by the expense. They could only be removed from the water with difficulty, and were liable to injury in the process of removal. The object of the law is undoubtedly a beneficent one, and the State ought not to be hampered in its enforcement by the application of constitutional provisions which are intended for the protection of substantial rights of property. It is evident that the efficacy of this satute would be very seriously impaired by requiring every net illegally used to be carefully taken from the water, carried before a court or magistrate, notice of the seizure to be given by publication, and regular judicial proceedings to be instituted for its condemnation."

We therefore conclude that when the State has the power to provide for the destruction of property it may authorize the same to be done summarily in cases when the property is of no great value and the emergency is such as not to admit of the delay essential to judicial inquiry and consideration, or the circumstances and conditions are such as to render regular judicial proceedings for its condemnation impracticable. *Sentell* v. *New Orleans, &c., Railroad Company,* 166 U. S. 705.

We think that the act properly authorizes the summary destruction of the hogs. Had it done otherwise, it probably would have been of but little efficacy. The owner of hogs is not deprived by it of relief except in cases in which his hogs are authorized to be killed.

Judgment affirmed.