## OLE B. NELSON and Others v. CITY OF MINNEAPOLIS and Another.[1]

July 29, 1910.

Nos. 16,570—(169).

**Milk ordinance — test of purity.**

An ordinance of the city of Minneapolis, prescribing as a test of purity and wholesomeness of milk brought into the city for sale that drawn from cows previously subjected to the tuberculin test and found free from disease, *held* not in conflict with the statutes of the state, and a valid police regulation. Following State v. Nelson, 66 Minn. 166.

**Question legislative, not judicial.**

The methods to be adopted to insure a supply of pure milk, and the standard by which the same shall be determined, is a legislative, and not a judicial, question.

**Destruction of impure milk.**

An ordinance authorizing the summary seizure and destruction of milk not conforming to the standard fixed by law is not violative of the constitutional rights of the citizens, nor a taking of property without due process of law.

Action in the district court for Hennepin county by twelve plaintiffs engaged in the milk business to enjoin defendant city and its health commissioner, its servants, agents, and inspectors under its control, from seizing milk belonging to plaintiffs. The answer set out the ordinance mentioned in the opinion and justified the seizure and destruction of milk under the ordinance of the city, and the city admitted that it was its intention to continue seizing milk and destroying it under the ordinance. The reply alleged that the

[1] Reported in 127 N. W. 445.

[Note] Validity of ordinances regulating the sale of milk, see notes in 1 L.R.A.(N.S.) 918, 926, 928, 932, 936; 14 L.R.A.(N.S.) 1061; 15 L.R.A.(N.S.) 331, 884; 18 L.R.A.(N.S.) 617.

ordinance was unreasonable and void, that the milk seized and destroyed was wholesome and free from any disease germs, and admitted plaintiffs owned no herds and were in the business of buying and selling milk at wholesale and retail. The case was tried before Brooks, J., who made findings and as conclusions of law found that plaintiffs were not entitled to an injunction or any relief whatsoever, and that defendants were entitled to judgment that the complaint be dismissed. From an order denying plaintiffs' motion for a new trial, they appealed. Affirmed.

*Gjertsen & Lund,* for appellants.

*Frank Healy, A. C. Finney,* and *Clyde R. White,* for respondents.

BROWN, J.

Action by plaintiffs, dairymen, for an injunction restraining and enjoining defendant city and certain of its officers from seizing and destroying the milk brought by them into the city for sale to their customers. The action was tried in the court below without a jury, and resulted in an order for judgment in defendants' favor. Plaintiffs appealed from an order denying their motion for a new trial.

Acting under the authority of section 1749, R. L. 1905, by which municipalities of this state are empowered to prescribe, among other things, the terms and conditions upon which milk, cream, and butter may be exposed for sale therein, and to affix penalties for a violation of the restrictions imposed, the city council of Minneapolis duly enacted an ordinance, section 10 of which provides, in effect, that no person shall bring into the city for sale, or offer for sale therein, any milk unless the owner of the cows from which the same is drawn shall first file in the office of the commissioner of health of said city a certificate of a duly licensed veterinary surgeon, stating therein that such cows have been by him inspected and examined, and tested with the tuberculin test, as provided in section 9 of the ordinance, and found free from tuberculosis and other contagious diseases. Section 9 referred to provides for the annual application of this particular test, and the issuance of a license to the

owners of cows thus tested and certified as free from disease. The ordinance included other provisions pertinent to this subject, and imposed a penalty of fine or imprisonment for a violation thereof. Subsequently the city council amended the ordinance by adding section 13, by which it was provided that any adulterated milk, or milk drawn from cows not tested in the manner required by section 9, brought into the city and there exposed for sale, might be summarily seized and destroyed by the health department of the city.

The several plaintiffs are engaged, both at wholesale and retail, in selling and disposing of milk in the city of Minneapolis, and handle and dispose of large quantities thereof daily. They secure their supply from cows not inspected and tested as required by the ordinance, and bring the same into the city for distribution among their customers. On April 21, 1908, the officers of the city health department seized and destroyed six cans of milk so brought into the city by the plaintiffs, and threaten and intend to so continue in the future, unless plaintiffs shall in all respects comply with the ordinance. This action was brought to restrain and enjoin further acts and proceedings in this direction.

1. The purpose of the action being, not to restrain a criminal prosecution for a violation of the ordinance, but to enjoin the continued seizure and destruction of milk shipped into the city, the action is brought within the rule laid down in Cobb v. French, 111 Minn. 429, 127 N. W. 415, and may be maintained. The distinction between actions of the character of this one and those brought to restrain prosecutions for the violation of penal laws is clearly pointed out in the opinion referred to, and requires no further discussion.

2. All questions respecting the validity of the ordinance, in so far as it requires the tuberculin test of cows from which dealers in milk obtain their supply, are disposed of by the case of State v. Nelson, 66 Minn. 166, 68 N. W. 1066, 34 L.R.A. 318, 61 Am. St. 399. The power of the city to impose this test as a police regulation was there expressly affirmed. We follow and apply the decision there made.

3. The further question as to the validity of section 13, by which authority is conferred upon the health department to seize and destroy milk taken from cows not inspected and tested under the requirements of the ordinance, was not involved in the Nelson case, and is now before us as an original proposition.

It is the contention of plaintiffs that the powers conferred upon the health department in this respect are unreasonable, unnecessary, and in violation of their constitutional rights, and hence unenforceable. In support of this position plaintiffs offered evidence tending to show, and the trial court found as a fact, that the pasteurization of milk will render the same pure and wholesome, and without deteriorating or lessening its food value; that pasteurization consists in heating the milk to a certain temperature, thereby destroying all germs of impurity. But the court further found that pasteurization, while theoretically possible, has not, so far as disclosed by the evidence, become a practicable method of destroying harmful bacteria in milk, when attempted for commercial purposes. A motion to strike out this finding, and insert in its place one to the effect that pasteurization of milk is feasible and inexpensive, was denied. The refusal of the court to so find is assigned as error.

The question of the public health is one of first importance in the regulation and control of human affairs, and all laws or ordinances enacted for that purpose, when not so arbitrary as to be unnecessarily destructive of individual property rights, are uniformly upheld by the courts. Milk constitutes one of the principal articles of our food supply, and the purity thereof, and its freedom from disease germs, is of serious concern to consumers. The methods, regulations, and restrictions to be imposed to attain, so far as may be, results consistent with the public welfare, are purely of legislative cognizance. The courts have no power to determine the merits of conflicting theories, nor to declare that a particular method of advancing and protecting the public is superior or likely to insure greater safety or better protection than others. The legislative determination of the methods, restrictions, and regulations is final, except when so arbitrary as to be violative of the constitutional rights of the citizen.

In the case at bar the city council, duly authorized thereto by legislative grant, determined that the tuberculin test of cows was the most feasible and practicable method of insuring a pure milk supply. This involved a matter of legislative judgment and discretion, and necessarily a comparison with other methods designed to secure the same result, including the theory of pasteurization. The courts cannot make this comparison, weigh the feasibility and the practicability of each, and substitute their judgment and discretion for that of the legislative body whose determination of the question they are called upon to review. Knobloch v. Chicago, M. & St. P. Ry. Co., 31 Minn. 402, 18 N. W. 106; City of Duluth v. Mallett, 43 Minn. 204, 45 N. W. 154; City of St. Louis v. Liessing, 190 Mo. 464, 89 S. W. 611, 1 L.R.A.(N.S.) 918, 109 Am. St. 774. It is probable that pasteurization, when placed upon a practicable and workable basis, will be found superior to the annual tuberculin test; but the determination of that must be left to the legislative department. There was, therefore, no error in the findings of the court, nor in its refusal to find that the method of pasteurization ought to have been adopted by the city.

Whether the ordinance, in so far as it authorizes a seizure and destruction of milk taken from uninspected cows, and brought within the city for sale, in violation of the ordinance, so violates the constitutional rights of plaintiffs, and constitutes a taking of their property without due process of law, is the important question in the case.

It is urged that before destroying the milk the authorities should be required to ascertain whether it is in fact unwholesome and unfit for food, and that to permit them to destroy the same without regard to whether it is or is not free from disease germs authorizes a taking of property for public use without compensation, and is not that due process of law guaranteed by the constitution. It is further claimed, with respect to the enforcement of police regulations, that power in the municipal officers, if constitutional rights be respected, must be limited to those methods that will work the least injury to private rights. Counsel's argument

in support of their theory of the law is plausible and forceful, but we are unable to concur therein.

The council determined that the tuberculin test was a reasonable and the most practicable method of insuring purity in the milk brought into the city. To enforce the regulation the council had the power to impose such penalties as would render the regulation effective and serve the purpose intended. It provided, in addition to fine and imprisonment, a destruction of the condemned milk. The authorities sustain regulations of this character. It is in fact the only feasible method of preventing contaminated or unwholesome milk from reaching the citizens, and to enforce or compel a compliance with the ordinance. A mere fine or imprisonment of the offender would not prevent the milk reaching the consumers; but its destruction, when brought into the city, is effective for all purposes. This authority must be sustained, unless it is to be held as a matter of law that the city should either determine that the milk is in fact impure, or, in the interests of the dairymen, establish and maintain a pasteurization plant, in which all milk brought into the city may be purified and rendered wholesome. Plaintiffs are in no position to insist upon either of these conditions. Dairymen and dealers in milk and cream, who persist in their refusal to comply with the inspection ordinance, which answers every purpose of the regulation, and entitles them to unrestricted entrance into the city with their milk, are in no position to urge the establishment of such a plant. They should not be heard to hurl defiance at a regulation in all respects reasonable, and insist that something more convenient to them should be adopted. With reference to the determination of the real character of the milk, it is enough to say that it would be utterly impracticable to so proceed. Whether wholesome or not could not, by the usual tests, be determined short of two months, and in the meantime the milk would become stale and worthless from natural causes.

This view is fully sustained by analogous cases in other states. In states where a particular standard is fixed by law, milk offered for sale which falls below such standard, the courts hold, may be seized and destroyed without notice to the owner, and that such act

constitutes neither the taking of property without compensation or without due process of law. Blazier v. Miller, 10 Hun, 435; Deems v. Mayor, 80 Md. 164, 30 Atl. 648, 26 L.R.A. 541, 45 Am. St. 339; Shivers v. Newton, 45 N. J. L. 469.

The court in Deems v. Mayor, supra, aptly remarked that: "The use of milk as an article of food enters largely, as we all know, in the daily consumption of every household, and there is no more fruitful source of disease than the use of adulterated and unwholesome milk. And if the appellant's contention be right, that the question whether or not milk, which is daily offered for sale in every part of a large and populous city, comes up to the standard prescribed by the ordinance, must be determined by the ordinary process of judicial investigation, or by chemical analysis, it would be impossible to prevent the danger to the public health necessarily resulting from impure and unwholesome milk. And it is absolutely necessary, therefore, that the appellee should have the power to provide for its inspection by proper means and instruments, and if, upon such inspection, it shall be found not to come up to the standard prescribed by the ordinance, to direct that the offending thing shall be destroyed."

The ordinance here under consideration established as a standard of pure milk that taken from inspected cows, those which had been subjected to the tuberculin test and found free from disease. It is not a differentiating fact or circumstance that a different standard may have been prescribed by the law before the court in the cases cited. It is clear from the reasoning of the court in those cases that the decisions there made would have been the same, had the standard fixed by this ordinance been there involved. The milk offered for sale failed to meet the required standard, and that was the foundation for the decision that a destruction thereof was not in violation of constitutional rights.

The validity of the ordinance is also sustained by those authorities which hold valid statutes authorizing a summary destruction of property used in express violation of law, such as fishing nets and tackle used for catching fish out of season. Wild game killed out of season may be seized by the public authorities and destroyed, or otherwise

disposed of. Lawton v. Steele, 152 U. S. 133, 139, 14 Sup. Ct. 499, 38 L. ed. 385; North American Cold Storage Co. v. City of Chicago (C. C.) 151 Fed. 120; Ross v. Desha, 83 Ark. 176, 103 S. W. 380, 21 L.R.A.(N.S.) 699, 119 Am. St. 131. It is probable that the rule sustaining the right of seizure and destruction is founded, to some extent, upon the value of property. If of little value, as compared with the expense of proceedings to determine its real character, or to condemn it as a nuisance, and the owner may, without inconvenience or hardship, avoid the drastic proceeding by compliance with the law, the courts do not hesitate long in sustaining the summary power of destruction. Lawton v. Steele, supra.

In the case at bar the daily supply of milk by several plaintiffs would be necessarily inconsiderable as compared with the cost of cumbersome judicial proceedings to determine that the milk exposed for sale by them was in fact unwholesome and impure, and therefore a nuisance. It is impracticable, therefore, either to determine in advance of destruction the true character of the milk, or institute judicial proceedings to condemn it as a nuisance, and unless the plaintiffs are in a position to insist that the city, by pasteurization, purify the milk for them, it cannot be held that the summary destruction is in violation of their constitutional rights. That they cannot so insist as a matter of right is clear.

The ordinance is not in conflict with the statute of the state upon the same subject. It was so held in the Nelson case. The case of City of St. Paul v. Peck, 78 Minn. 497, 500, 81 N. W. 389, is not in point. There the city ordinance imposed an inspection fee upon the owners of dairy herds, and, construing the statutory authority under which the ordinance was enacted, we held that the power to so provide was expressly withheld by the legislature, and that the city had no right to impose an inspection fee. Such is not the situation in the case at bar. The authority conferred by section 1749, R. L. 1905, contains no such restriction.

Order affirmed.