**CITY OF PLYMOUTH, Respondent,**

v.

**Stephen J. SIMONSON, Appellant.**

**No. C9–86–1466.**

Court of Appeals of Minnesota.

May 5, 1987.

Review Denied June 26, 1987.

James M. Strommen, Lefevere, Lefler, Kennedy, O'Brien & Drawz, Minneapolis, for respondent.

Stephen J. Simonson, pro se.

Considered and decided by CRIPPEN, P.J., and FOLEY and LESLIE, JJ., with oral argument waived.

### MEMORANDUM OPINION

LESLIE, Judge.

### FACTS

Since the fall of 1982, appellant Stephen J. Simonson has made many telephone

calls, and sent dozens of cards, letters and gifts to Amy Zitur and her family at their home in Plymouth. Although none of the correspondence was obscene or explicitly threatening, Zitur became upset and frightened each time she received mail or calls. Zitur continually requested that she and her family be left alone, but Simonson continued to call and write.

Zitur forwarded all correspondence to the local police to investigate. Ultimately the City of Plymouth filed complaints against Simonson for four counts of violating Plymouth Ordinance 2000.07 which prohibits harassment. Simonson moved to dismiss the action for lack of jurisdiction. The motion was denied and after a jury trial Simonson was found guilty of two counts of harassment. Simonson's motion to vacate judgment or for a new trial was denied and this appeal followed. Simonson claims his acts occurred outside the City of Plymouth and therefore the city has no jurisdiction to prohibit his behavior.

## DECISION

Plymouth Ordinance 2000.07 provides:

It is unlawful for any person to do any of the following with intent to annoy, harass, cause feelings of imposition, intimidation, oppression, or cause fear for personal safety:

\* \* \* \* \* \*

(d) Mails, transmits, delivers, or provides for the delivery of letters, cards, or other articles to persons within the City of Plymouth for the above purpose;

The two pieces of mail upon which Simonson's convictions were predicated have a Minneapolis postmark. Simonson claims the act of mailing was completed in Minneapolis; Plymouth has no power to regulate conduct in Minneapolis; and such an exercise of jurisdiction constitutes an improper extraterritorial act.

The supreme court rejected this argument nearly a century ago in *State v. Nelson,* 66 Minn. 166, 68 N.W. 1066 (1896). In *Nelson* the City of Minneapolis had enacted an ordinance requiring inspection of dairies

and dairy herds of all those who sold milk within the city. *Id.* at 168, 68 N.W. at 1067. Nelson, convicted of violating the ordinance, claimed the ordinance was invalid by reason of its extraterritorial operation, in that it provided for the inspection of dairies and dairy herds outside the city limits. *Id.* at 169, 68 N.W. at 1067–68. The *Nelson* court found no merit to this argument, and held:

The ordinance has no extraterritorial operation, and there has been no attempt to give it any such effect. The only subject upon which it operates is the sale of milk within the city.

*Id.* at 170, 68 N.W. at 1068. The court noted that the purpose of the ordinance would be frustrated if Minneapolis could not regulate dairies situated outside the city:

Any police regulations that did not provide means for insuring the wholesomeness of milk thus brought into the city for sale and consumption would furnish very inadequate protection to the lives and health of the citizens.

*Id.* at 169, 68 N.W. at 1068.

Similarly, the Plymouth ordinance has no extraterritorial operation. It merely restricts the delivery of harassing mail to people in Plymouth. If Plymouth could not restrict the flow of damaging mail into the city, the purpose of the ordinance would be frustrated.

Simonson claims that the act of mailing a letter is complete upon mailing, as in contract law. Thus, he claims, his acts were completed in Minneapolis and he committed no act in Plymouth. However, case law indicates the act of mailing in this context is completed only upon receipt. A person who writes a letter soliciting campaign contributions and mails that letter completes the solicitation only upon delivery. *United States v. Thayer,* 209 U.S. 39, 43, 28 S.Ct. 426, 427, 52 L.Ed. 673 (1908). In rejecting the argument that solicitation was complete upon mailing, Justice Holmes stated:

[*The solicitation*] *was not complete when the letter was dropped into the post.* If the letter had miscarried or had been burned, the defendant would not

have accomplished a solicitation. The court below was misled by cases in which, upon an indictment for obtaining money by false pretenses, the crime was held to have been committed at the place where drafts were put into the post by the defrauded person. * * * But these stand on the analogy of the acceptance by mail of an offer, and throw no light. A relation already existed between the parties, and it is because of that relation that posting the letter made the transaction complete. * * * *[U]ntil after the letter had entered the building, the offense was not complete;* but, when it had been read, the case was not affected by the nature of the intended means by which it was put into the hands of the person addressed.

*Id.* at 43, 28 S.Ct. 427 (emphasis added, citations omitted).

In the present case, Simonson's act of mailing was not complete until after the letters reached the Zitur residence. When the correspondence was read, the damage was done. As in *Thayer*, this case is not affected by the nature of the means used to put the letters into the hands of the person addressed. The ordinance is not extraterritorial; it merely restricts the delivery of harassing mail into the city.

Affirmed.